The next case this morning is 521-0398, People v. Cotton. Arguing for the appellant is Sarah Curry. Arguing for the appellee is Michael Lennox. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning. Happy holiday. Ms. Curry, you're for the defendant in this case. Are you ready to proceed? I am. All right, you may do so. Thank you. May it please the court, Sarah Curry from the State Appellate Defender and I represent Leonard Jr. This is an appeal from a third-stage evidentiary hearing on a post-conviction claim of ineffective assistance of plea counsel. Leonard Cotton Jr. was only 15 years old at the time of the offense in this case, with a cognitive functioning of just a seven or eight-year-old. This case was investigated by disgraced detective Rick Perry, whose conduct resulted in co-defendant Joshua Custer's statement being suppressed and his case being dismissed. Cotton had a difficult decision to make, accept the state's offer or reject the offer and pursue a motion to suppress his own statement. Unfortunately, Cotton's plea counsel failed to obtain all the necessary information to advise Cotton in making this decision. Cotton told counsel that Perry had a conversation with him off-camera in which Perry said that if Cotton provided a statement, Perry would let him go. Counsel testified that she had not had a lot of luck motions to suppress based on things allegedly said off-camera, but had counsel looked into Cotton's allegation, she would have found a report authored by Officer Moore indicating that Perry spoke to Cotton while he was in a holdover cell off-camera. This report could have been used to support a motion to suppress Cotton's statement. Cotton's allegation about this off-camera conversation was further supported by the fact that co-defendant Custer's statement to was suppressed in part because Perry spoke to Custer off-camera. At Custer's suppression hearing, Custer testified that Perry told him that if he provided a statement, Perry would let him go, which is almost identical to what Cotton said Perry said to him. However, counsel would not have been aware of these similarities because she did not obtain the transcript from Custer's suppression hearing, even though it took place six months before Cotton's guilty plea. Plea counsel still did not obtain a copy of the transcript after learning that the state would no longer use Perry as an essential witness in felony cases because of his misconduct in regard to Custer. Prior to the state's offer to Cotton, the assistant state's attorney informed the court that Custer's attorney had subpoenaed Perry's personnel records and that the records were under seal. The state offered that it would have no objection to turning the records over to counsel, but she would have to file a motion to have the records released. However, counsel never filed the motion. Excuse me, do we know that that offer was actually made before the plea offer? We do because it was on the same day that Cotton was found fit, so there would have been no offer until he had been found fit and the case been put back in a trial procedure. It was moments later that the state's attorney brought up the records that had been under seal, and importantly, the state's attorney was suggesting that this information could be Brady information, which is why he was bringing it up. He wanted to make sure that counsel had access to this information, but she would just have to file the motion to have the records released because they were under seal, but she never did that. There was no reason for her not to obtain these records to see if there was anything in them that she could use to challenge the voluntariness of Cotton's statement. This is especially true where Custer's attorney had procured the records and Custer's statement had been suppressed. Finally, in order to decide whether to accept or reject the state's offer, Cotton also had to assess the strength of the state's case against him if he went to trial. Aside from Cotton's own statement, the only other evidence against Cotton were the statements given by his father and Warren Rogers, both of whom said that Cotton admitted that he was involved in the shooting. However, both of these statements were made to Perry and therefore not reliable. The video of Perry's interview with Cotton Sr. depicts Perry aggressively over the course of hours threatening Cotton Sr. with obstruction, threatening him with going to jail or his son going to jail or the possibility of never seeing his son again. Council admitted that she never reached out to Cotton's father to discuss his statement, which would have been pretty easy to do. If Council had reached out to Cotton Sr., he would have told her that his statement was untrue and that he only told Perry what he wanted to hear because he thought that was the only way Perry would let him and his son walk free. With Perry's credibility problems and the possibility that the state would not even call him at trial, even if Cotton Sr. was impeached with his statement, there would have been a strong argument that the statement shouldn't be believed. By the time of Cotton's plea, Perry was no longer being called as an essential witness by the state in felony cases. Against that backdrop, it was unreasonable for Council not to procure any and all information regarding Perry's actions in this case and how they might be used to support a motion to suppress Cotton's statement or challenge the state's evidence at trial. This is especially true where Dr. Cuneo had opined that due to Cotton's impaired cognitive functioning, he would not have been able to read or understand the Miranda warnings, which would have significantly bolstered a motion to suppress. Cotton was prejudiced by Council's failure where he testified that had he been presented with all the information about Custer's case and Perry's credibility, he would not have pled guilty. Moreover, Cotton had a strong argument that his statement should have been suppressed and that Perry's credibility problems would have sabotaged the state's case at trial. For these reasons, Cotton requests that this course reverse the denial of post-conviction relief and remand for the opportunity to withdraw his guilty plea. What about the fact that the defense counsel in the hearing said that this was trial strategy and that the state could have withdrawn its offer at any time? Well, the state could have withdrawn offer, but the state wouldn't have withdrawn its offer if counsel had gone to talk to Cotton's father to get more information about his statement. Or arguably, if she had filed the motion to release, which she said she was going to do, the state said it had no objection to that, though that information was very pertinent. All this information was extremely important for her advising Cotton on whether or not to accept the state's offer. This was a good deal that was offered. It was a good deal, but that doesn't mean that Cotton shouldn't be advised of all of the relevant and important factors to consider when deciding to accept or reject the offer. Based on similar information, Custer's statement had been suppressed and the case had been dismissed, so it was critical that he have all of the information. Whether or not it was a good deal, he still needed to have all of the information to make an informed decision about whether to plead guilty to felony murder. I'm sorry, I can't hear you. I'm not hearing you either. I didn't do anything. Oh, Justice Cate, we lost your sound there for a minute, but we can hear you. Oh, you're back. Yep, I can hear now. We must have had an internet interruption. There were differences between the co-defendant's case and your client's case because of the father's testimony, right?  So, the fact that the statement was suppressed in the co-defendant's case doesn't mean it necessarily would have been suppressed, or even if it were suppressed in your client's case, that he would have been found not guilty or the case dismissed. That's correct, but Perry was the one that interviewed Cotton's father with Perry's credibility problems, and if the state couldn't even call him to testify at trial, there was a good argument that Cotton Sr.'s statement to Perry shouldn't be believed, and if he testified at trial that he only gave that statement because Perry threatened him and threatened that he would never see his son again and that the statement was untrue, with Perry's credibility problems, there's a good argument that the statement shouldn't be believed, and certainly Cotton needed to know all of this information before making the decision whether or not to accept the state's offer. I'm sorry, I can't hear you again. Justice Gates, we can't hear you. What relief are you asking for? We're asking for the reversal of the denial of post-conviction relief and remand for the opportunity to withdraw his guilty plea. Okay. Justice Moore, any questions? No questions. Justice Scholar? No questions. Okay, thank you, Ms. Curry. You'll have a few moments after Mr. Lennox argues in rebuttal. Mr. Lennox for the state? Yes, Your Honor. Good morning, opposing counsel, Your Honors, and may it please the court. My name is Michael Lennox and I represent the state in this matter. This court should affirm the denial of the defendant's post-conviction petition at the third stage where the record shows that trial counsel was not ineffective because the defendant did not want to pursue a motion to suppress his admission of guilt out of fear that the plea deal might be revoked and he would then be looking at a much harsher sentence than the minimum sentence for first-degree murder without the mandatory enhancements at trial. Your Honors, there are three stages to a post-conviction petition and in the third stage the circuit court serves as the fact finder and therefore it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts. In this stage, the third stage, and the second stage, the defendant bears the burden of, quote, making a substantial showing of constitutional violation, unquote, and in this stage the court determines whether the evidence introduced demonstrates an entitlement to relief. A finding from a third stage hearing will not be reversed unless it was manifestly erroneous, meaning that the error is, quote, clearly evident, plain and indisputable, unquote, ergo that, quote, the opposite conclusion is clearly evident, unquote. To prevail on a claim of ineffective counsel, a defendant must show that the counsel's representation fell below an objective standard of reasonableness as measured by reference to prevailing professional norms and that the substandard representation so prejudiced the defendant as to deny him a fair trial. However, counsel's strategic choices are virtually unchallengeable and an attorney's decision to file or not file a motion is regarded as a matter of child strategy. Effective assistance of counsel refers to competent, not perfect representation, therefore there is a strong presumption that counsel's performance fell within a wide range of reasonably professional assistance. Great deference is given to an attorney's decisions as there is a strong presumption that an attorney has acted adequately and a defendant must overcome the strong presumption that the challenged action or in action, quote, might have been the product of sound trial strategy, unquote. What about this notion, though, that all the information wasn't gathered so that Mr. Cotton could make an informed decision? What about the notion with relation specifically to the records from the officer? Yes, Your Honor, so I did note that that was brought up in opposing counsel's argument. This information about Detective Perry was of no consequence, namely because there was no time Detective Perry was alone with the defendant to create this risk of malfeasance that was created with the code of him. But I would like to address the defendant's reply brief. In his reply brief, the defendant contends that he did not argue that his plea counsel was ineffective for failing to file a motion to suppress, yet rather that his argument was that plea counsel was ineffective for, quote, advising him to plead guilty before obtaining the necessary information to adequately advise him whether to accept the state's offer and plead guilty or to reject and pursue a motion to suppress, and that can be found in the defendant's reply brief on page one. This, however, is a distinction that's not needed to be made because I did not mischaracterize the defendant's argument. The defendant seeks to show some nuance by stating repeatedly that slightly more information obtained on the plea counsel's part might have resulted in a stronger motion to suppress, but as my brief outlined, these additional minuscule shreds of information would not have bolstered a motion to suppress or been so compelling as to change the defendant's mind to file one because of the differences in what happened with the defendant and the co-defendant's case, and because the defendant was adamant from the beginning that he wanted to take the plea and not jeopardize this very favorable plea deal, as Justice Cates noted, that this was a very favorable plea deal, which he ultimately didn't. I want to interrupt you because I don't think you've answered Justice Shuler's question. I mean, if you did, I didn't hear it. Maybe she could repeat it, but I didn't hear you answer the question. So, the question was, how do you make an informed decision without all of the information? So, is that a deficiency of trial counsel for not following up and filing a motion to receive all of the officer's information? How do we know that that wouldn't have changed things? Yes, Your Honor. So, I suppose I wasn't clear in my answer. My answer was essentially going towards the prejudice of that. I don't believe that this information would have changed anything, and I imagine that the attorney felt so as well, but my point is that the same issue with the co-defendant, where the co-defendant did have time alone with the detective where a malfeasance could have occurred, was not present here, where all of the interrogations, some other officer was present, so prejudice could not have resulted from this information. Well, there was an allegation of one conversation that was off the record. Yes, Your Honor. And there was a report that documented that. Yes, Your Honor, and in that conversation, the conversation consisted of this. The defendant tapped on the glass to get the detective's attention, and the detective said to him, I believe the exact words were, oh, you're saying you want to talk to me now, and that was it. We don't know what happened. You know, Officer Perry, this was a well-known, the state's attorney came out and said they were not going to use this officer again. His credibility was shot. The state was willing to turn over these records. We don't know what all was in those records. Yes, Your Honor, we don't necessarily, I believe there was some actual comment on that in the what was in it. Obviously, the records weren't provided in the record, but there was some comment on that in the transcripts, but the fact remains that the same issues that the co-defendant had aren't present in the defendant's case because there were always officers around the defendant and the detective. Even in this report that Detective Perry asked the officer, Officer Morris, I believe the defendant referred to them as Officer Moore in their brief. Even in that report, I mean, Detective Perry asked for that to be written, and Officer Morris wrote everything that happened. But was my answer satisfactory to your question? Yes, thank you very much. So, though the defendant repeatedly points to what he believes to be my failure to address his argument in his reply brief, the defendant failed to address many points in my answer, and I invite him to do so today in his rebuttal. Namely, first, that the defendant repeatedly made clear he did not wish to file any motions for fear his 20-year deal would be revoked. Second, though a family member described the defendant as, quote, basically illiterate, unquote, he admitted to, quote, reading, unquote, his post-conviction petition, which comports with the fact that he was deemed to be malingering later on. Third, that despite the defendant's asserting that he thought his plea counsel filing a motion would lead to him facing a minimum of 45 years, quote, with no option, unquote, he actually understood the 45-year sentence was not a foregone conclusion, describing it as a risk if a motion to suppress was filed. Fourth, that the defendant's recollection of the statements he gave to police was inconsistent, both in the number of times he spoke to police and the subject matter. Fifth, that this, quote, unquote, unrecorded conversation that the defendant had with the detective only consisted of what I spoke to your honors earlier about. Sixth, the defendant's guilty plea was independent of his conviction, and it is therefore not a sufficient factor to justify relief, as our United States Supreme Court has indicated in McCann versus Richardson. Seventh, that the defendant's recantation is untrue, namely where he states that his video interview was stopped numerous times so he could be threatened and handcuffed by the detective and coerced into implicating his son, yet there was no jump in time on the clearly visible clock on the wall of the interrogation. And your honors, I have more points, but I see that I'm out of time, so I'll rest on my brief for the rest. Okay, thank you. Justice Scholar, any further questions? No questions. Justice Moore? No other questions. Okay, thank you, Mr. Lennox, for your arguments. Ms. Curry, rebuttal? Oh, we can't hear you. You're muted. Sorry about that. Just a couple of points. First, Cotton doesn't dispute that he said at the plea proceedings that he did not want to file a motion to suppress, but that's irrelevant here because the whole point is that he didn't have the information to make that informed decision. So that he agreed that he didn't want to file a motion to suppress prior to the plea is of no import. Secondly, while Custer's interrogations were held without other officers present, which is different than in this case, Officer Perry did take Cotton from the interrogation room to the holdover cell and back. And all Officer Moore's report said was that Cotton tapped on the glass and Officer Moore said that Perry began to converse with the male juvenile. And I heard Perry say, oh, you're saying you want to talk to me now. Moore didn't hear the entire conversation. Moore didn't follow them back to the interrogation room to hear what was said during that walk. And Moore didn't say that he heard everything that was said. So it does support Cotton's allegation that Perry spoke to him off camera and told them that if he provided a statement, he would let him go home. And finally, in regard to Perry's records, counsel says that, you know, we should just assume that there was nothing in there that would have helped inform a decision about whether to accept or reject the plea officer. But that's entirely the point. We don't know exactly what's in those records. And certainly Custer's attorney found it important to get those records. And Custer's statement was suppressed, possibly based on critical information that was in those records that counsel in this case easily could have gotten and easily could have used to help Cotton make an informed decision about whether or not to accept the plea the state's offer. If there are no other questions, Cotton asks that his case be remanded for the opportunity to withdraw his guilty plea. Justice Schorler, any questions? No questions. Justice Moore? No other questions. Okay. Thank you both for your arguments here today. This matter will be taken under advisement and we will issue an order in due course.